Will the clerk please call the next case? 320269 Lako Properties Appellant v. M-OK Freight Lines Corporation, Terrence O'Keefe, and Philip Micelli, Appalese. Mr. Del Naro, you may proceed. Good afternoon. My name is John Del Naro, and if it pleases the court, I will present Appellant Lako's arguments for reversal of the lower court's ruling in this matter. This appeal is about defendant's eight-year scheme to thwart Lako's awful collection efforts and evade their legal obligation to pay a lawfully obtained judgment that Lako secured in April 2014. The defendants, beginning in the summer of 2014, lied, misrepresented, and engaged in a pattern of falsehoods designed to thwart Lako's collection efforts and evade paying the judgment. On June 7, 2022, approximately eight years after the judgment was entered, the trial court entered an order containing written findings of material and intentional misrepresentation by the defendants. The court stated that Lako was defrauded by the appellee's conduct in this case. The court's findings included intentional misrepresentation and falsehoods beginning in May of 2018 and only related to truck ownership as follows. First, in May of 2018, defendant Mr. O'Keefe lied in a citation exam and said that MLK Distribution owned no assets and did not own any trucks. On July 21, 2020, Mr. Maselli similarly lied and stated that MLK Distribution did not own any assets and did not own any trucks. In March and October of 2020, Mr. O'Keefe filed false affidavits also stating that MLK Distribution did not own any trucks. The court also found that Mr. Maselli lied directly to the court on March 12, 2021, and again stating that MLK Distribution did not own any trucks. And then the court found that there were continuing violations for not correcting the record from 2018 forward. After the court found and entered its order with the specific misrepresentations, the court entered an order on June 10, 2022, granting sanctions under both Rule 137 and 219 against all the defendants, but only in the amount of $53,217. The trial court arbitrarily limited monetary sanctions to LACO's fees in establishing that the judgment debtor owned trucks and only to find that there were trucks in the amount of $53,000. That result is wholly incompatible with Rule 137 and 219 in their purposes of sanctioning misconduct and deterring future misconduct. It's very important to step back and understand what this case was about from the very beginning. This was never a lawsuit to find trucks or have anything to do with trucks. LACO was a landlord. It filed a lawsuit for rent. It only sought to be paid for unpaid rent. That's all this case should have been about, and it should have ended within weeks after LACO secured its judgment. The judgment debtor had sufficient assets at the time of the judgment to satisfy the judgment. And what the defendants did is they did the following. They switched the name on contracts with an entity by the name of Sholey that paid MLK Distribution between $3 and $4 million a year. It switched the name to MLK Freight Lines Corp. Sholey has now admitted in writing in an appeal that the name change occurred from MLK Distribution to MLK Freight Lines. The second thing that the defendants did was that they filed a petition to vacate the default judgment. And that was in November of 2014, approximately four months after the switching of the name change on the Sholey contracts. Three important pieces of information were falsely included in that document. First, they included a certificate of dissolution, administrative dissolution of MLK Distribution under the state of North Carolina. The second thing is that they filed two affidavits of Mr. O'Keefe and Ms. Selle both stating that MLK Distribution ceased doing business, that MLK Freight Lines was a different entity. A year later, a year after they filed the certificate of dissolution, they reinstated MLK Distribution with the state of North Carolina. And we established and proved that MLK Distribution continued in business and sold trucks. And in fact, it sold trucks weeks, or at least sold one truck, weeks after Mr. O'Keefe testified on May 1st, 2018, that MLK Distribution ceased doing business and never owned any assets. LACO has asserted that, one, this was a bait-and-switch. It was a bait-and-switch that not only defrauded LACO, but defrauded the court and the judicial process. And that LACO asserts three bases of error in the trial court's ruling in limiting LACO to sanctions, in the amount of $53,000. First, the trial court mistakenly relied on false assertions of law that LACO was only entitled to sanctions related to truck ownership, and not sanctions directly related to the entire sham defense that MLK Distribution went out of business and owned no assets prior to the entry of a default judgment. Second, by limiting LACO to establishing truck ownership, the trial court erred by failing to consider and include all of LACO's professional fees, and not just the fees in establishing truck ownerships. Second, LACO asserts that the trial court erred in excluding admissible evidence that had already been in the common law record in connection with a motion for summary judgment entered in LACO's favor. That the defendants, in particular, Mr. Maselli and running a company by the name of MMD Transport, had done the exact same thing before. That MMD Transport suffered default judgments, and that MMD Transport evaded those judgments, in particular, one with extra leasing by providing false information. The court also excluded evidence that LACO put out that in 2014, not 2018, but all the way back to 2014, that the defendants lied in their affidavits in stating that MLK Distribution ceased doing business and owned no assets. The court also refused to allow evidence of false answers to discovery, including false answers to garnishments, the answer to the complaint, and also with respect to a federal fraud conviction, which, again, was part of the common law record in connection with the motion for summary judgment. The court also included inadmissible evidence. The court allowed Mr. Opal and Mr. Duncan to testify on the spot, without prior notification to LACO, that they would be testifying at the trial. They were not included on any sort of trial list, and they testified about their own beliefs as to what the document said. What's important, though, is that the defendants here that lied, and they're the ones who were the subject of the sanctions hearing, they knew they lied. Their counsel's belief as to what documents they provided was completely irrelevant and prejudicial to LACO in establishing that it's full right to attorney's fees in this case. With respect to point one, LACO has asserted four cases, which it believes are unanimous cases, that all hold that LACO is entitled to all of its fees, Diane v. McDonald, Brandon Appell, France America v. Lee, and Pete v. Green. Appellee states at page 31 of its brief, in trying to distinguish these cases, and I quote, the fundamental and distinguishing feature in all the cases cited by LACO is the fact that the improper conduct was the cornerstone of what was an entirely baseless lawsuit or defense to a lawsuit. That's exactly what happened here. The lie about the trucks was the cornerstone, as Judge Rome later stated, to this entire case. And it was a cornerstone to an entirely baseless defense of this lawsuit, because the defendants always had the assets and had the wherewithal to pay the judgment. Instead, they just simply lied. And the judge found that they lied. And any discussion in the briefs that seems to mitigate that is inappropriate and irrelevant, because now it's a final order with respect to the findings against them. On June 9th, 2022, as I stated, Judge Rome did state that the lie about the trucks was the cornerstone to the defense that MLK Freight Lines was not a successor. While that's true, it was also true that it was a lie about the sham defense in the entire post-judgment proceedings. And in fact, on January 19th of 2021, the defendants stipulated that MLK Distribution and MLK Freight Lines Corp were a predecessor and successor. In other words, the stipulation was that MLK Freight Lines Corp was a successor they waited a year, the defendants waited a year to file a pleading pursuant to Professional Rule of Conduct 3.3 stating that MLK Distribution owned trucks all along. LACO has never requested more than its out-of-pocket costs. Even though Illinois courts under both Rule 137, 219C hold that punitive damages are certainly available, numerous cases, including Ashley v. Scott, state that the purpose of these rules is to punish wrongful conduct, deter the perpetrator from conducting similar acts in the future, deter others from committing similar acts in the future, and compensate the party wronged by the conduct. The arbitrary and de minimis amount of $53,000 awarded here does not fulfill any of these purposes when the defendants' decidedly improper conduct successfully harassed, vexed, embattled, and entangled LACO for over eight years. Rule 219 cases are even more infatigable of the punitive nature of sanctions. The Supreme Court, our Supreme Court, in Buehler v. Whalen in 1977, stated that unless there is a penalty that's a proportional violation, that the discovery procedures are meaningless. And in conclusion, I will tell you, Your Honor, that because of the, what we believe is now a 30-year pattern by these defendants, at a minimum, LACO should be entitled to all of its fees, professional fees, attorney's fees, accounting fees, to stop this behavior. Because if this is allowed to go on, then this Court, and other courts, will face similar cases that go on for over eight years of lives. And if the Court has any questions, I'd be happy to answer them. I see my time is almost up. Any questions from the Court? Not at this time. Thank you, Mr. Del Naro. You will have five minutes in reply. Thank you. Mr. Olcol, you may respond. Thank you, Your Honor. May it please the Court, may it please counsel for the Appalachian LACO properties. The arguments presented to the Court this afternoon and those that are made in the briefs that have been filed with this Court have to be evaluated in the context of the standard of review. And that standard is abuse of discretion. More specifically, it is LACO's burden to establish to this Court that based upon the evidence presented to the trial court when applied to the law as it relates to sanctions under Supreme Court 137 and 219 that no reasonable person would agree to make a decision. In this case, the decision by the trial court on April 15th to deny LACO's request for $518,965.70 plus $18,000 in costs. Now, with respect to determining the propriety of the Court's denial, the Court requires one to look at the law. And the law here relates to Supreme Court Rule 137, and sanctions orderable in Supreme Court Rule 219. Rule 137 does authorize a trial court to award sanctions, but only for filing of pleadings, motions, or other papers with the Court that are in violation of that rule itself. Furthermore, the party seeking relief must identify not only the improper statement that may have been made in that document filed with the Court, but also the fees and costs from the false statement. That's the Conner v. Chicago holding case we cited at page 11 of our brief. Furthermore, with respect to Rule 219 sanctions, they must be proportionate to the gravity of the discovery violation. Is there a discovery violation that you can think of that would be graver than the completely ridiculous position and outright lie that your clients told and persisted in for an egregious period of time? And what could be more fundamental? That the Court is speaking to the issue concerning trucks? Yes, it is. Okay. Thank you, Judge. With respect to the issue of trucks, is it correct that Terry O'Keefe testified that the MLK distribution did not own any trucks? That was on May 1st of 2018 during a citation examination. That was when that first brought up, at that particular point in time. But with respect to a discovery violation, Mr. Justice Brennan, the fact is that there was, beginning with certainly my involvement in the case, and I can speak also to Andrew Duncan, that's all set forth in our brief and in the trial exhibits admitted on behalf of the defendants, every single document, with respect to discovery, every single document that was requested by LACL during the course of either the citation proceeding or during the course of the 2018 MR case, separate case, there isn't any documents that were in the possession of the defendants that were not produced. In fact, Judge Rome found that there was no evidence of any failure to produce documents. With respect to the issue concerning trucks, the fact of the matter is that the fees that they're requesting here, and that's where it goes to the question of symbols and fees that are directly related to the false statement, I point out that even at page 10 of LACO's reply, he points to counsel for LACO who's present before the court today, referred to his own testimony in which he was asked this question, and so it's your contention that it cost you, your firm and your client $537,000 to change to determine whether, and change to determine whether to retract or trailer? Answer, no, that's not my statement. Question, in fact, your application says that the sum total, that $537,000 change was being sought for purpose of not only proving tangible assets, but intangible assets. Is that correct? That is correct. I further point out that with respect to the issue here, it's a trial court found on November 11th, the trial court asked LACO's counsel if he had anything further to present to the court with respect to sanctions under Rule 137 or Supreme Court Rule 219, and his answer was no. On that particular date, the trial court went through everything that was presented by LACO's counsel. It was LACO's counsel, the trial court said, it was his job to connect all related to the ownership of trucks. Now, with respect to the ownership of trucks, it is correct that Mr. O'Keefe in his citation examination in May of 2018, said that trucks weren't owned by MLK Distribution, but the fact of the matter is, is that LACO's counsel admitted to the court and set forth in our brief that, but for COVID, in his citation concerning the trucks, because my clients didn't have it, these are trucks that are 6, 7, 8 to 10 years old, he could have subpoenaed records from the Secretary of State, but said that he didn't do that because it was interfered with as a result of COVID, but the fact of the matter is, when the statement of trucks first arose in May of 2018, COVID didn't prevent a subpoena in any of 2018 or any time in 2019 until March of 2018. When did your client have the epiphany that he owned the trucks? We filed a motion pursuant to the Code of Professional Responsibility 3.3, when in February of 2022, we were provided with documents by LACO's counsel that they had obtained by subpoena in 2022 with respect to those trucks, and as soon as we had that information, we filed our motion on 3.3. I do want to point out, Your Honor, My question was when did your clients have the epiphany, not when did you realize it as a lawyer. I'm not ascribing any ill will to the lawyers. I'm wondering, does the record provide any indication when your client had the epiphany that he continued to own the trucks he apparently owned all along? Yes, when I filed the motion in February of 2022, and the reason for that is simple. The documents that were provided to us up to that point in time, including a sales tax return, showed that the trucks were purchased under what's known as an MC number. That MC number corresponded to a company called MLK Transportation Services LLC. We also produced documents to show that the three trucks were insured by MLK Transportation Services. That's all well and good. Let's not obfuscate the whole issue. It's a simple question. There was a judgment against your client for unpaid rent, right? Yes. These are ordinary small claims, except for the amounts. You had a citation to discover assets. LACO did, correct? That's correct. The representative of the company is under oath in those citation to discover assets. Is that correct? May 1, 2018. I'm sorry, you're breaking up. That's correct. When was that? Pardon me, Your Honor? When was the citation to discover assets? May 1, 2018. In 2018? The citation examination in which the trucks were brought up was on May 1, 2018. That's correct. When was the judgment given to LACO?  in April of 2014. It took LACO four years to do a citation to discover assets? Well, they first started a citation against Sholey Corporation, as I recall. And then in 2016, when Andrew Duncan, he was before me in terms of representing MLK Distribution and MLK Freight. When a citation to discover assets  at that point in time, documents were being produced on a regular basis to LACO, documents consisting of tax returns, QuickBook records, bank records, canceled checks, contracts, and everything was being produced to LACO's, it wasn't Mr. Del Nero, it was his predecessor, Mr. Rick Himes, to whom all those documents were produced. Then when I came into the case, which was in 2018, I filed my appearance and it set forth in the records beginning on Christmas Eve, after calling Mr. Del Nero to discuss the matter with him, beginning on Christmas Eve, we started producing documents for MLK Freight Lines Corp. And that continued all the way into, well, through the period of depositions in 2020. So the first citation, I believe that was issued with respect to MLK Distribution was in 2016 and Andrew Duncan accepted service of that citation, filed his appearance, and immediately started producing documents. He also produced documents, powers of attorney and other documents required by the IRS so that LACO could obtain documents directly from the IRS regarding tax returns of MLK Distribution. They also provided an authorization to obtain whatever documents they wanted from MLK Distribution's accountant. That was all done beginning in 2016. Well, I'm kind of simple from small counties. Why is all this, documents, why don't you just haul them into court and ask them questions? I wasn't around your time. I know you weren't. I'm not talking to you, but that's a better question for I suppose opposing counsel. But you got a judgment. You move on. Right. To address Justice Brennan's question also, I would point out that in addition to the Certificate of Insurance showing that MLK Distribution did not insure any trucks, documents were produced by LACO's counsel to me. I believe it was in October of 2020 to which we responded as in my affidavit filed before the trial court, documents produced by LACO at that particular point in time printouts off of the record regarding research show that MLK Distribution did not own any trucks. It showed MLK Distribution did not insure and never insured any trucks. It also showed that MLK Distribution only held a broker's license which had since expired. In other words, it had no authority to run trucks. In fact, we provided to LACO's counsel, I did in emails, those are exhibits before the trial court. I also provided what's known as Illinois Apportionment Identification Cards. Those are cars that have to ride with the truck and those Illinois ID Apportionment Cards are issued by the Illinois Secretary of State were issued in the name of MLK Transportation Services. So are you trying to say that in the citation to discover assets there was no obfuscation or lie or anything that this distribution company had assets? What are we saying here? What we produced, the answer to that would be no based upon the bank statements that were produced that showed that the bank accounts for MLK Distribution which was the original, which was a citation. That was the lessee, right? That was the lessee. Those were produced to show when the bank accounts existed, when the bank accounts were closed and also with respect to, there was, I even addressed in a letter that I sent to LACO's counsel on March 13th, which is exhibit 14 in the record, Defendant's Exhibit 14, which I pointed out that we had produced bank records to show that while LACO was claiming $41,000 that belonged to MLK Distribution, which under a citation they'd have to turn over, the bank records that were produced to LACO's counsel actually showed that the check was written by Scholey to MLK Distribution. So MLK Freight Lines wasn't getting paid for work done by MLK Distribution. We did also point out that there was a $14,000 payment that Scholey had made to MLK Freight Lines Corp and that was a payment that should have been made to distribution. And that's also addressed in Defendant's Exhibit 14, my letter of March 13th, in which we showed that those funds were repaid years before they proceeded with the citation. So in other words, there were no funds at the time that the citation was issued. MLK Distribution did not have any funds at the time and that was confirmed with documents produced in February 2022 that there was a point in time when MLK Distribution had three trucks that were titled to MLK Distribution. Even though, I would point out, even though the documents that we had obtained such as the sales tax return, insurance certificates, Illinois ID apportionment cards and transportation services LLC, never MLK Distribution. I'd also point out, as I do in our brief, that we also produced four boxes, thousands of pages of records to show that MLK Distribution engaged and worked solely as a broker. It didn't carry freight. It had no DOT authority to carry freight. That didn't occur until October of 2013, October 31st to be exact. That's record evidence on behalf of defendants. It was at that point in time that MLK Freight Lines Corp obtained federal authority to carry freight and that's when MLK Freight Lines Corp started its business of carrying freight, a business that MLK Distribution never engaged in. So, when you look at Supreme Court Rule 137-2019, it has to be looked in the totality of the circumstances. This case isn't anything close to the Diane case where false evidence was introduced. This isn't like the Apple case where the defendant brought a counterclaim for malpractice. This isn't a case in which the answers to the interrogatory said that the accident didn't happen. This is a case in which from the day one, we produced every available document at the request of counsel for LACO. No document was altered. No document that we had in our position was withheld. So, in those circumstances, this situation is significantly different than the cases cited by LACO. And for that reason, we believe that Judge Rome acted properly. He did not abuse his discretion and respectfully, this court could not find under these circumstances that no reasonable person would agree with the ruling made by the trial court in this case with respect to sanctions. Okay. Your time is up, Mr. Opal. Thank you. Are there questions from the court? No. Thank you. Mr. Del Nero, you may reply. Yes, Your Honor. In fact, I'd like to reply first to you because you asked a very specific question as to what was going on between the date of the judgment and when Mr. O'Keefe finally set for his citation exam. And I will tell you, Mr. O'Keefe and Mr. Maselli dodged the citation. There were numerous motions for rule to show cause that continued for years. And what Mr. Opal has just stated to you that LACO was provided with all the information they requested, nothing was changed, is a lie in itself. My client served a subpoena and asked for documents and received from the accountant for MLK distribution a tax return stating that the tax return was a final tax return of MLK distribution. That tax return was never filed with the IRS. Mr. Opal is correct. They did provide the information or the ability of LACO to actually go to the IRS. And what they found was that they were given a false tax return. LACO specifically asked for in its request for records copies of leases and information related to trucks. LACO also asked for a listing of the information related to trucks. This was part of the sanctions hearing. Judge Rome did not allow the evidence that LACO requested information about a listing of trucks and trailers along with copies of the leases and the title documents because the judge said, well, you don't have the right to ask them for a listing. But the request had also included the actual underlying documents. Had a truthful answer been provided, LACO would have known that there was $110,000 worth of trucks. But it wasn't just trucks that was withheld from LACO. It was the $123,000 that it was sitting on that it owed to MLK distribution on the day that it received a non-wage garnishment that it never turned over. To LACO. The name change on the contracts was not a name change that said just simply we have a new entity. But that the name change was effective for an extension a year and a half afterward. So the only party that was entitled to receive any money under contracts with CHOLI that paid $3 to $4 million a year was MLK distribution. That's the basic record. Now Mr. Ockel also says that nothing was altered. He gave us everything. And as he well knows when we were trying to get Mr. Maselli's residence so that we could bring him in for an examination Mr. Ockel himself provided tax returns. The more recent tax returns which would have shown that Mr. Maselli had already moved from the state of Illinois to Florida to move out of the jurisdiction establish residence gain the advantage of Florida exemption laws those were excluded. And I told Mr. Ockel that the documents that he provided to me omitted a W-2 that would have given us the address. And if I may just very very quickly Mr. Ockel's statement that this is to be decided on an abuse of discretion is wrong. And that's right in the Apple case. Because in the Brennan-Apple case it says when interpreting a Supreme Court rule when it's a question of law we review de novo and what happened here was the court interpreted the rule to limit LACO to trying to find trucks. Now Mr. Justice Brennan you asked specifically about when was the epiphany and what Mr. Ockel said was that it was in February of 22 when he files 3.3. On October 13th of 2020 I remember it well because it was my birthday I sent Mr. Ockel and the accountant copies of three documents they were may I finish my sentence yes please they were vehicle title transfers what they are are vehicle titles and on the back it says that the purchaser of the vehicles was MLK Distribution signed by Mr. Maselli so when Mr. Ockel says that the epiphany did not occur until he filed this 3.3 that's not true because they certainly knew all along and he certainly knew on October 13th of 2020 that he had three documents that were official documents signed by his client saying that they purchased vehicles I apologize for being overly dramatic about this but this is the worst case I have ever seen in my 36 years of practicing law thank you very much. Thank you for your arguments in this matter this afternoon it will be taken under advisement written disposition will issue I think you note that missing from our remote courtroom is a third justice Justice McDade is unable to have appeared in the remote courtroom today personally however she is a fully participating member in this case and will be participating in the decision on this case as well as a video of today's argument as well as of course she has full access to the record and also to the written briefs and your arguments that contain therein so for the record I wish that to be noted